1

2   PAYNE LAW OFFICE
Christopher D. Payne (AZ Bar No. 013999)
2111 E. Highland Ave, Suite 145
3   Phoenix, AZ 85016-4732
Telephone: 480-420-7199
4   Email: Chris@cpaynelaw.com
and
5   WEISS BROWN, PLLC
Garland A. Brown, Jr.  (AZ Bar No. 023123)
6   6263 N. Scottsdale Road, Suite 340
Scottsdale, AZ  85250
7   Telephone: (480) 327-6652
Email: garland.brown@weissbrown.com
8
*Co-Counsel for Realty Executives International, Inc.*
9

10              **UNITED STATES DISTRICT COURT**

11                    **DISTRICT OF ARIZONA**

12
REALTY EXECUTIVES          | Case No.:
13   INTERNATIONAL, INC., an Arizona
corporation,                     | **COMPLAINT:**
14                                  | 1. TRADEMARK INFRINGEMENT
                Plaintiff,       | 2. FALSE DESIGNATION OF ORIGIN
15                                  | 3. BREACH OF CONTRACT
v.
16
OTTO E. LUGO AND LINDA
17   BONARELLI LUGO, a married couple;
LONG ISLAND PARTNERS, Inc., a New
18   York corporation dba REALTY
EXECUTIVES WEST; and,
19   HUNTINGTON HOMES, Inc., a New
York corporation dba REALTY
20   EXECUTIVES NORTHSHORE,.

21                Defendants

22                    **COMPLAINT**

23
        Plaintiff Realty Executives International, Inc., by and through undersigned counsel,
24
alleges, as follows:
25

26

**NATURE OF THE CASE**

This is an action at law and in equity by Plaintiff Realty Executives International, Inc. ("Plaintiff") for trademark infringement, unfair competition, and false designation of origin arising funder sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114 and 1125 as a result of Defendants' intentional use of Plaintiff's distinctive trademark to confuse and mislead consumers who are seeking to do business with Plaintiff's franchisees and divert them to Defendants' customers. Plaintiff seeks injunctive relief and damages for trademark infringement and false designation of origin.

**THE PARTIES**

1.      Plaintiff Realty Executives International, Inc., is an Arizona corporation having a principal place of business located in Maricopa County, Arizona.

2.      On information and belief, Long Island Partners, Inc. is a New York corporation with a principal place of business located in the State of New York.

3.      Upon information and belief, Huntington Homes, Inc., is a New York corporation with a principal place of business located in the State of New York.

4.      Upon information and belief, Realty Executives Northshore is a trade name for one of the Defendants herein or is a separate legal entity responsible for the allegations alleged herein.

5.      Upon information and belief, Realty Executives West is a trade name for one of the Defendants herein or is a separate legal entity responsible for the allegations alleged herein.

6.      Otto Lugo is a resident of New York, and upon information and belief an officer, owner or controlling person of Huntington Homes, Inc., and Long Island Partners, Inc. and/or the entities doing business as Realty Executives Northshore, and Realty Executives West.

7.      Linda Lugo is a resident of New York, and upon information and belief an officer, owner or controlling person of Long Island Partners, Inc. and Huntington Homes and/or the entities doing business as Realty Executives Northshore, and Realty Executives West.

8.      Otto and Linda Lugo and were at all times relevant to the allegations in this Complaint were married as husband and wife, and were officers or in control of the Defendant entities for the benefit of their marital community or estate.

9.      Upon information and belief, all of the Defendants and each of them is related to each other, are the alter egos of each other or a successor entity, are the agents of each other, or otherwise acted in concert with a common purpose sufficient enough to make each liable for the acts of each other. Accordingly all of the Defendants will collectively be referred to as "Defendants."

### JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. § 1331 and § 1338. This case primarily involves a federal question, complete diversity of citizenship exists, and the amount in controversy exceeds the jurisdictional limit for this Court.

11.     Defendants are subject to jurisdiction of this Court by virtue of negotiating and entering into contracts with Plaintiff including a Regional Development Agreement ("RDA") and Franchise Agreement ("FA"), whereby Defendants agreed to be subject to Arizona law and the jurisdiction of this Court.

12.     This matter involves Defendants violation of Plaintiff's trademarks protected by Arizona law, giving Arizona a substantial interest in the subject matter of this case.

13.     Defendants are subject to general and specific jurisdiction of this Court by virtue of their substantial contacts with Arizona, including travelling to Arizona to receiving training and franchise related materials related to the use of Plaintiff's trademarks and systems.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and pursuant to the contracts between the parties, specifically the RDA, wherein the Defendants waived venue objections.

COMMON ALLEGATIONS

MARKS, SYSTEM AND KNOW-HOW

15.     Plaintiff owns certain logotypes, service marks, and trademarks involved in the operation of a REALTY EXECUTIVES office, including the name "REALTY EXECUTIVES", either alone or in combination or association with the color scheme or pattern, design, insignia, slogans, signs, trade names, trademarks, service marks, certification marks, and any other trademarks, service marks or trade names designated for use in connection with a REALTY EXECUTIVES office (collectively, the "Marks").

16.     Plaintiff owns numerous federally registered and common law trademarks including the words "Realty Executives" and various logos, including those registered with the USPTO: US Reg. No. 3893269, US Reg. No. 3857233 and US Reg. No. 1037111

17.     Plaintiff developed a system that includes the use of the "100% Commission Concept" (the "System") for providing to the general public real estate services, including leasing, listing, purchasing, referral, selling, trading and other services of a similar nature.

18.     The System is distinguished by the use of the Marks by Plaintiff in the United States of America in association with any plan of a nationwide real estate service to identify the system of real estate services as well as the type, character and high standards of quality service, efficiency and courtesy associated with Plaintiff.

19.     The System is distinguished by the use of the Marks and other materials used in in about the real estate offices and supplies bearing the Marks or other distinguishing characteristics.

20.     The System is distinguished by the use of the Marks as distinctive and readily recognizable insignia, sign and emblem comprising sales materials that become associated with the real estate services provided pursuant to the System.

21.     The System is distinguished by the use of the appearance, color scheme, pattern and design and that color combination of the insignia and emblem that make up the Marks on sales materials of the real estate services provided pursuant to the System.

22.     The System is distinguished by the use of the Marks to create a standardized in uniform real estate service identified by the Marks and the System for providing such real estate

services of a distinctive nature in accordance with fair and ethical policies and practices and in accordance with high standards, efficiency and courtesy.

23.    Plaintiff possesses proprietary know-how including, methods, techniques, specifications, procedures, marketing strategies, information and knowledge of and experience in the design and operation of its System, offices and Regional Development Business and the rendering and providing of authorized and approved services (collectively, the "Know-how").

24.    Plaintiff discloses its proprietary Know-how through its Franchisee Training Program, and other materials in Phoenix, Arizona.

25.    Plaintiff's Regional Development Agreement and Franchise Agreements require signatories and/or owners of parties to those agreements to take Plaintiff's Franchise Training Program in Phoenix,.

## LICENSE TO USE MARKS SYSTEM AND KNOW HOW PURSUANT TO AGREEMENT
## REGIONAL DEVELOPMENT AGREEMENT

26.    Plaintiff has, and does, utilize Regional Development Agreements ("RDA") to authorize Regional Developers, who are individuals or entities, to act on its behalf to offer and enter into franchise or subfranchise agreements on its behalf within specific geographic regions, such as New York.

27.    The RDA required that Plaintiff be an intended third-party beneficiary of any sublicensing agreement Defendants entered into on Plaintiff's behalf.

28.    Plaintiff entered into a Regional Development Agreement ("RDA") and Addendum with Defendants on or about August 2007.

29.    The RDA grants a Regional Developer limited authorization to offer, sell, develop, service and support subfranchises and to offer a license for the use of the Marks solely in connection with the activities contemplated by the RDA, specifically including the sublicensing of the Marks pursuant to the terms and conditions of any Subfranchise Agreement.

30.    The RDA and any Subfranchise Agreement provide the sole right to use Plaintiff's Marks and such right is limited to a license granted by Plaintiff to operate a Regional

Development Business or Franchise pursuant to and only in compliance with the RDA or Subfranchise Agreement.

31.     Defendants executed the RDA and thereby agreed not to use the Marks as part of any corporate or trade name or with any prefix, suffix, or other modifying words, terms, designs, or symbols, or in any modified form, nor in connection with any media advertising, promotional materials, posters, and displays, receipts, stationary and forms in connection with the sale of any unauthorized product or service not expressly authorized by Plaintiff.

32.     Defendants agreed through execution of the RDA to not do anything that would jeopardize or diminish Plaintiff's rights to, or the value of, the Marks.

33.     Defendants agreed through execution of the RDA that unauthorized use of the Marks, by the terms of the Agreements, constitute an infringement of Franchisor's rights in and to the Marks.

34.     Defendants agreed through execution of the RDA not to employ any of the Marks in signing any contract, lease, mortgage, check, purchase agreement, negotiable instrument or other legal obligation, or in any manner that is likely to confuse or result in liability to Plaintiff for any indebtedness or obligation.

35.     By executing the RDA, Defendants recognized the great value of the goodwill associated with the Marks and acknowledged that the Marks and all rights therein and goodwill pertaining thereto belonged exclusively to Plaintiff or its affiliate.

36.     By executing the RDA, Defendants agreed not to use Plaintiff's Know-how in any other business or capacity and would maintain the confidentiality of the Know-how during and after any term of the RDA.

37.     The RDA grants Plaintiff the right to review and disapprove of any website or activity conducted by Defendants over the Internet, related to Plaintiff's System or Marks.

38.     The Defendants had no rights to continue to operate the RDA following the expiration of the initial term without specific permission from Plaintiff.

**FRANCHISE AND SUBFRANCHISE AGREEMENTS**

39.     Plaintiff has and does create franchises by granting the Regional Developer the authority to grant a subfranchise and license to establish, maintain and operate a real estate office using the System and the Marks within a specific geographic area through Franchise Agreements ("FA").

40.     Plaintiff entered into a franchise agreement with Long Island Partners on or about October 3, 2007.

41.     Defendant Otto E. Lugo executed a personal guarantee to unconditionally guarantee the performance of Long Island Partners obligations under the franchise agreement signed on October 3, 2007.

42.     Linda B. Lugo and Huntington Homes, Inc. entered into a Franchise Agreement with Plaintiff via Defendant Otto Lugo's role as the Regional Developer on or about January 1, 2008.

43.     All franchise agreements with Defendants were terminated and any and all licenses revoked for Defendants to use or utilize Plaintiff's Marks, System or Know-How.

**DEFENDANTS' ENTITIES CONTINUED USE OF MARKS, SYSTEM AND KNOW-HOW**

44.     Defendants continue to utilize the Marks, System and Know-how by holding themselves out as "Realty Executives International Northshore" as viewable at http://www.realtyexecutivesnorthshore.com/.

45.     Defendant Linda B. Lugo is holding herself out as the Owner/Broker for Realty Executives International Northshore.

46.     Defendant Otto E. Lugo is holding himself out as a licensed real estate broker at Realty Executives International Northshore.

47.     The Realty Executives International Northshore website includes the following language on its home page:

Welcome to Realty Executives North Shore - your resource for purchasing on Long Island. Our Executives are here to serve YOU!

48.     The Realty Executives International Northshore website includes the following image on its home page:



49.     Realty Executives International Northshore (nor any of its controlling entities) does not have a license to utilize Plaintiff's Marks.

50.     The Realty Executives West website includes the following language on its home page:

Welcome to Realty Executives North Shore - your resource for purchasing on Long Island. Our Executives are here to serve YOU!

51.     The Realty Executives International West website includes the following image on its home page:



52.     Realty Executives International West does not have a license to utilize Plaintiff's Marks.

**First Cause of Action**
**(Trademark Infringement)**
**(15 U.S.C. § 1114(a))**

53.     The paragraphs of this Complaint are repleaded and incorporated by reference, as if fully set forth herein.

54.     Defendants' unauthorized use of the Plaintiff's Marks or colorable imitations thereof in connection with the creation, advertising and promotion of real estate services is likely

to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such services.

55.    By their unauthorized use of the Plaintiff's Mark or colorable imitations thereof in connection with real estate services, Defendants have infringed and continued to infringe the registered Plaintiff's Mark in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

56.    Defendants' unauthorized use of the Plaintiff's Mark or colorable imitations there of in connection with real estate services, as alleged above, was intentionally done with a view and purpose trading on and benefiting from the substantial reputation and goodwill in United States associated with the Plaintiff's Mark.

57.    Defendant acts of trademark infringement, as alleged herein, have injured Plaintiff in that Plaintiff has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.

58.    Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

59.    Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiff's business, reputation, and goodwill, unless defendant unlawful conduct is enjoined by this court.

60.    Plaintiff is entitled to recover all damages sustained by Defendants' actions; all profits realized by Defendants through their infringing use of the Plaintiff's Mark or colorable imitations thereof in connection with real estate services that are not authorized franchises, and the cost of this action.

61.    Defendants' actions have been willful and deliberate, entitling Plaintiff to recover treble damages and/or profits and an award of reasonable attorneys fees against Defendants.

**Second Cause of Action**

**(False Designation of Origin)**

**(15 U.S.C. § 1125(a))**

62.     The paragraphs of this Complaint are repleaded and incorporated by reference, as if fully set forth herein.

63.     Defendant's unauthorized use of the Plaintiff's Mark in connection with the offering of real estate services through businesses they are not authorized Plaintiff's Mark franchises constitutes a unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' and Defendants' customers' services.

64.     As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as alleged, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, designation of origin has caused and will continue to cause Plaintiff to lose sales to which you would otherwise be entitled, unless such off unlawful conduct is enjoined by this Court.

65.     Plaintiff is entitled to recover all damages sustained by Defendants' actions; all profits realized by Defendants through their unlawful use of the Plaintiff's Mark or colorable imitations thereof in connection with the offering of real estate services through businesses that are not authorized franchises; and the cost of this action.

66.     Defendants' actions have been willful and deliberate, and entitling Plaintiff to recover treble damages and/or profits and an award of reasonable attorneys fees against Defendants.

**Third Cause of Action**

**(Breach of Contract)**

67.     The paragraphs of this Complaint are repleaded and incorporated by reference, as if fully set forth herein.

68.     Defendant's unauthorized use of the Plaintiff's Marks, System and Know-how in connection with the offering of real estate services through businesses which are not authorized Regional Developers or franchises constitutes a breach of the RDA, Sections 8, 9, 12.3 and 12.4, the franchise agreements and the limited license for use of Plaintiff's Marks, System and Know-how.

69.     As a direct result of Defendants' breaches, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business and intellectual property.

70.     Plaintiff is entitled to recover all damages caused by Defendants' breaches of contract, including all profits realized by Defendants through their unlawful use of the Plaintiff's Marks, System and Know-how or colorable imitations thereof in connection with the offering of real estate services through businesses that are not authorized franchises; and the cost of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered:

A.  That the Court enter judgment in favor of Plaintiff and against Defendants on all causes of action alleged herein;

B.  The Court enter judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 *et seq.* by infringing on Plaintiff's Marks;

C.  That the Court enter judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing upon Plaintiff's Marks through the marketing, sale and promotion of services bearing the Marks;

D.  Permanently enjoining Defendants'' and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by , through, or under authority from Defendants, or in concert or participation with Defendants and each of them from:

1)  Using the designation "REALTY EXECS" and colorable imitations of Plaintiff's REALTY EXECS Mark in connection with Defendants'

business or services, including but not limited to the provision of real estate services; and

    2) Using any trademark, service mark, name, logo, or source designation of any kind that is a copy, Reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to, the trademarks, service marks, or logos of plaintiff, or is likely to cause confusion, mistake, deception, or public misunderstanding that defendant's businesses or services are the business or services of Plaintiff, or are sponsored by or in any way related to Plaintiff.

    3) Otherwise infringing upon Plaintiff's Marks;

    4) Unfairly competing with Plaintiff's Marks; and,

    5) Causing a likelihood of confusion or injury to Plaintiff's business reputation

E. Awarding Plaintiff compensatory and punitive damages, an accounting of all profits received by Defendants to their unauthorized use of Plaintiff's Marks, System or Know-how or colorable imitations thereof; the cost of this action; and a trebling of damages and profits as authorized by law.

F. Enter Judgment that Defendants have breached contracts with Plaintiff and enter an amount to be determined at trial for said breaches of contract.

G. Award Plaintiff its attorneys' fees and costs pursuant to the terms of the applicable contracts or pursuant to A.R.S. § 12-341.01.

H. Granting Plaintiff such other and further relief as the Court may deem just and proper.

DATED this 30th day of June, 2015.

THE PAYNE LAW OFFICE

By /s/ CHRISTOPHER PAYNE (SBN013999)
Christopher D. Payne
Co-Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

☒     I hereby certify that on June 30th 2015, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System, who will also be served copies of the attached document by electronic mail:

☐     I hereby certify that on _____ ____, 2015, I will serve the attached document by electronic mail and First Class United States Mail on the following, who are not registered participants of the CM/ECF System:

By: /s/ CHRISTOPHER D. PAYNE 013999
Christopher D. Payne